**RYAN G. WELDON**
**Assistant U.S. Attorney**
**U.S. Attorney's Office**
**P.O. Box 8329**
**Missoula, MT 59807**
**105 E. Pine, 2nd Floor**
**Missoula, MT 59802**
**Phone:  (406) 542-8851**
**Fax:  (406) 542-1476**
**E-mail:  Ryan.Weldon@usdoj.gov**

**ATTORNEY FOR PLAINTIFF**
**UNITED STATES OF AMERICA**

# IN THE UNITED STATES DISTRICT COURT
# FOR THE DISTRICT OF MONTANA
# GREAT FALLS DIVISION

| | |
|---|---|
| **UNITED STATES OF AMERICA,**  Plaintiff,  vs.  **WILLIE ANDREW SHARP,**  Defendant. | **CR 19-03-GF-BMM**  **OFFER OF PROOF** |

## THE CHARGE

The defendant, WILLIE ANDREW SHARP, is charged by indictment with count I—Theft from an Indian Tribal Government Receiving Federal Funding, in violation of 18 U.S.C. §§ 666(a)(1)(A), 2, and count II—Wire Fraud, in violation of 18 U.S.C. §§ 1343, 2. The indictment also contains a forfeiture allegation, which requests a money judgment for $38,711.00.

## PLEA

The defendant, WILLIE ANDREW SHARP, will enter a voluntary plea of guilty to count II in the indictment. The motion for change of plea filed with the Court represents, in the government's view, the most favorable disposition of the case against the defendant. *See, e.g., Missouri v. Frye*, 132 S. Ct. 1399 (2012).

## ELEMENTS

The defendant will plead guilty to Wire Fraud. In pleading guilty to count II of the indictment, the defendant acknowledges that:

**First**, the defendant knowingly participated in, devised, and intended to devise a scheme or plan to defraud, or a scheme or plan for obtaining money or property by means of false or fraudulent pretenses, representations, or promises;

**Second**, the statements made or facts omitted as part of the scheme were material; that is, they had a natural tendency to influence, or were capable of influencing, a person to part with money or property;

**Third**, the defendant acted with the intent to defraud, that is, the intent to deceive or cheat; and,

**Fourth**, the defendant used, or caused to be used, a wire communication to carry out, or attempt to carry out, an essential part of the scheme.

The United States may prove knowledge through two avenues—(1) positive knowledge; and, (2) deliberate ignorance. *United States v. Heredia*, 483 F.3d 913, 918 (9th Cir. 2007). Positive knowledge is defined as follows:

> An act is done knowingly if the defendant is aware of the act and does not act through ignorance, mistake, or accident. The government is not required to prove the defendant knew that his acts or omissions were unlawful. You may consider evidence of the defendant's words, acts, or omissions, along with all the other evidence, in deciding whether the defendant acted knowingly.

Ninth Circuit, 5.7 – Knowingly—Defined (March 2018). Knowledge may also be established through deliberate ignorance, which is defined as follows:

> You may find the defendant acted knowingly if you find beyond a reasonable doubt that the defendant:
>
> 1. Was aware of a high probability that members of the Head Start Program claimed overtime hours on their timesheets that were false; and,
> 2. Deliberately avoided learning the truth.
>
> You may not find such knowledge, however, if you find that the defendant actually believed the Head Start employees' claimed overtime hours on their timesheets were accurate, or if you find that the defendant was simply careless.

Ninth Circuit, 5.8 – Deliberate Ignorance (March 2018).

## PENALTY

Count II of the indictment charges the crime of Wire Fraud, in violation of 18 U.S.C. §§ 1343, 2.  This offense carries up to twenty years imprisonment, a $250,000 fine, a $100 special assessment, and three years supervised release.

## ANTICIPATED EVIDENCE

If this case were tried in United States District Court, the United States would prove the following:

### A.   The Blackfeet Head Start

The Head Start Program was designed to help break the cycle of poverty, providing preschool children of low-income families with a comprehensive program to meet their emotional, social, health, nutritional, and psychological needs.  Head Start and Early Head Start Programs provide services to over a million children every year, in every U.S. state and territory, in farmworker camps, and in over 155 tribal communities.

Head Start is overseen by the United States Department of Health and Human Services (HHS), Office of Administration for Children and Family Services.  Head Start is one of the longest-running programs attempting to address systemic poverty in the United States by intervening to aid children.  Those who participate in the Head Start program receive grants from the U.S. Department of

Health and Human Services (HHS), which is a federal agency and provides federal funds.

**B.      Chairman's Approval and Support of the Overtime Scheme**

Willie Andrew Sharp authorized, approved, and ensured others authorized and approved overtime at the Blackfeet Head Start Program, all while knowing such overtime to be materially false and fraudulent, in whole and in part.  All total, individuals at Blackfeet Head Start, including Dense L. Sharp, the wife of Chairman Sharp, falsely claimed more than 5,800 hours of overtime and fraudulently received over $174,000 in federal funds from the Head Start Program in a 15-month timeframe.

Numerous individuals would testify at trial that they informed Chairman Sharp the individuals at the Head Start Program were fraudulently claiming overtime hours.  Examples of such testimony are identified below:

- One individual told Chairman Sharp that community members were beginning to notice the overtime scheme at Head Start, but Chairman Sharp said not to worry.

- According to other sources, Chairman Sharp knew those claiming overtime at Head Start were not working the claimed overtime.  For example, Chairman Sharp's wife, Denise Sharp, claimed 146 extra days of work in 15 months.  Denise Sharp was with Chairman Sharp on the weekends, not at work as she claimed.

- The Blackfeet Tribal Treasurer refused to pay the overtime claims for those at Head Start because it was fraud.  Chairman Sharp, however, instructed the Blackfeet Tribal Treasurer to pay the claims, knowing, or having reason to know, such claims to be false.  In doing so, Chairman

> Sharp said the Blackfeet Tribal Treasurer worked for him—nobody else. Chairman Sharp also signed and approved the false time cards, knowing such claims to be false, when the Blackfeet Tribal Treasurer refused to do so.

- Chairman Sharp told one Head Start employee, "[Y]ou better park a vehicle at the BHS complex." This made it appear as if they were working, when Chairman Sharp, in fact, knew no such overtime was worked.

When the fraud was uncovered, the Blackfeet Head Start Program was audited by two different firms. Both audits questioned the overtime claims, identifying the claims as "beyond necessary and reasonable" and lacking any supporting documentation. The Blackfeet Tribe agreed, through its own internal review, that it could not justify the overtime claims made by Blackfeet Head Start Program personnel. As a result, the Blackfeet Tribe repaid HHS $250,620.29 to satisfy the agency findings for disallowed costs associated with the Blackfeet Head Start Program overtime claims and other expenses.

During the subsequent criminal investigation, authorities interviewed various individuals. One individual explained that an on-site, internal review of the Blackfeet Head Start Program took place by government authorities from Washington, D.C. This review team was supposed to interview Head Start teachers and parents about the program while on site. Chairman Sharp and others, however, refused to allow the team to conduct the interviews and provided limited access to the program. After the review, Theresa Calf Boss Ribs, Patrick Calf Boss Ribs,

Ethyl Grant, Denise Sharp, Carol Bird, and others met in a conference room. Despite not actually working the hours, everyone present in the room agreed to continue claiming overtime.

The investigation has resulted in the indictment and conviction of Denise Sharp, Theresa Calf Boss Ribs, Patrick Calf Boss Ribs, Carol Bird, and Allen Shane Goss. All of the check deposits from the Head Start employees, including those that went to Denise Sharp and Willie Sharp based on the fraudulent overtime claims, created wires, which travelled from Montana, to and from Minneapolis, Minnesota, through the Federal Reserve System, and back to Montana again.

DATED this 4th day of November, 2019.

KURT G. ALME
United States Attorney

*/s/ Ryan G. Weldon*
RYAN G. WELDON
Assistant U.S. Attorney