Andrew I. Huff
Law Office of Andrew I. Huff
2601 Broadway Street
Helena, MT  59601
Ph:    (406) 551-9120
Cell:  (406) 465-7623
Fax:  (406) 441-2100
aihuff@msn.com

*ATTORNEY for Defendant*
*Willie Andrew Sharp*

## IN THE UNITED STATES DISTRICT COURT
## FOR THE DISTRICT OF MONTANA
## GREAT FALLS DIVISION

| | |
|---|---|
| UNITED STATES OF AMERICA, | Case No. CR-19-03-GF-BMM |
| Plaintiff, | |
| v. | **WILLIE SHARP'S SENTENCING MEMORANDUM** |
| WILLIE ANDREW SHARP, | |
| Defendant. | |

COMES NOW Defendant Willie Andrew Sharp, by and through his counsel of record, and respectfully submits this Sentencing Memorandum setting forth all factors the Court should consider in determining what type and length of sentence

is sufficient, but not greater than necessary, to comply with the statutory directives set forth in 18 U.S.C. 3553(a).

Mr. Sharp has been employed as a teacher and has been the sole provider for three grandchildren in his home from May, 2019 to February, 2020, during which time co-defendant Denise Sharp was incarcerated.  Mr. Sharp is disappointed in himself and ashamed, and he accepts responsibility for his actions.  He asks for forgiveness and a second chance to do right.  Mr. Sharp is a worker who has always supported his family, provided a healthy environment and role model for his grandchildren, and contributed to his community.  The risk of recidivism is non-existent.  Mr. Sharp is 66 years old, and he suffers from both diabetes and high blood pressure.  Under all these circumstances, a sentence of probation or probation with home detention would be "sufficient, but not greater than necessary" to fulfill the goals of sentencing established by Congress.  18 U.S.C. 3553(a).

There is a further factor to consider.  The nation is grappling with the coronavirus epidemic.  According to the website of the Centers for Disease Control and Prevention, and widespread reporting, older adults with underlying health conditions are most at risk for contracting the virus and suffering serious health consequences, including death.  See, e.g.  < www.cdc.gov/coronavirus/ 2019-ncov/specific-groups/high-risk-cimplications.html >; < www.newscientist.

com/article/2236846-coronavirus-risk-of-death-rises-with-age-diabetes-and-heart-disease/ >.

According to news reports, jails are already considering releasing "inmates who are at high risk of contracting the coronavirus." <u>See</u> < www. nydailynews.com/coronavirus/ny-coronavirus-board-of-correction-release-inmates-nyc-jails-20200317-sfavifzqznhwpayhtcmadwkh6e-story.html >.  The New York Board of Corrections said in a statement released today, March 17, 2020, "The city must drastically reduce the number of people in jail right now and limit new admissions to exceptional circumstances." <u>See id</u>.  Los Angeles County and Cuyahoga County [Ohio] have, according to a press report, begun to release inmates to minimize a potential outbreak within their systems. <u>Id</u>.  The federal Bureau of Prisons has already suspended inmate visitation and restricted movement of prisoners within the system. <u>See</u> < www.usatoday.com/ story/news/politics/2020/03/17/prisons-locking-down-keep-coronavirus-out/5058388002 >.   If an outbreak were to occur in any facility housing Mr. Sharp, he would be at great risk of contracting the virus, with consequent results.

Under these extreme circumstances, a non-custodial sentence is most appropriate for Mr. Sharp.  He is a non-violent offender; 66 years old; with underlying health conditions.  Defense counsel requests a sentence of probation or probation with a condition of home detention.

## I.     INTRODUCTION

### A. Mr. Sharp's Counts of Conviction

Willie Sharp is being sentenced after pleading guilty to Count 2: Wire Fraud, in violation of 18 U.S.C. 1343.  Mr. Sharp pled guilty on November 6, 2019, pursuant to a Plea Agreement with the government.

### B.  Mr. Sharp's Background

Mr. Sharp comes from a traditional Native American community, and his grandfather, Fish Wolf Robe was a respected elder of the Blackfeet Tribe. However, his upbringing was damaged by his parents' substance abuse, domestic violence, and divorce.  PSR 48.  As the oldest child of seven children, Mr. Sharp was in the position of having to take care of himself and younger children (PSR 48), and by the end of his teenage years he was essentially on his own.  His father died of alcoholism a few years after Mr. Sharp married and started his own family. PSR 47, 49.   Mr. Sharp has always worked, beginning with firefighting before going to college, and then teaching in the Browning Public Schools beginning in the 1980s and later becoming a school principal, where he was a well-respected educator.  PSR 74-75.  His lengthy history of certificates, licenses, accreditations, and awards attests to his work ethic and desire to improve himself and contribute to his community.  PSR 68-69.  Beginning in 2006, Mr. Sharp was elected to the Blackfeet Tribal Council, and he became Chairman of the Tribal Council in 2008.

Mr. Sharp has been married to Denise Sharp for 44 years. PSR 50. While the marital relationship has struggled at times, and this criminal action has certainly added stress to their relationship, Willie and Denise have stayed together to raise three children and three grandchildren. PSR 50-51.

Mr. Sharp bitterly regrets the damage his course of conduct has done to the Head Start Program and the Blackfeet Tribe. He states in his acceptance letter that "I apologize and know that damage was realized and I can only hope to learn from this episode and become a better person and leader." He is "sorry and ashamed." But as in the past, Mr. Sharp intends to persevere through difficulty and work to regain his honor. Mr. Sharp will continue to work on behalf of his family and community, because that is the core of who he is as a person.

## II. PSR AND OBJECTIONS

The U.S. Probation Office PSR finds a total offense level of 16, a Criminal History Category of I, resulting in a guideline range of 21 to 27 months of imprisonment. PSR. 88. There are no objections to the PSR, although it should be noted that Mr. Sharp does take various medications for his medical conditions, as stated in PSR ¶ 56, but contrary to ¶57 which misstates that he takes no medications.

## III.   SENTENCING MANDATE

The Court must consider the parsimony provision of 18 U.S.C. 3553(a), which requires the Court to "impose a sentence sufficient, but not greater than necessary."  The Court may devise a reasonable sentence supported by facts, evidence, and relevant sentencing statutes.  Mr. Sharp asks the Court to consider alternative forms of imprisonment permitted by the guidelines and a downward variance under 18 U.S.C. 3553(a).

## IV.   MR. SHARP'S SENTENCE

### A.  Departure:  5H1.6 – Family Ties and Responsibilities

While Denise has been incarcerated, Mr. Sharp has stepped up to care for three grandchildren ages 19, 12, and 7.  He provides a healthy male role model for these children, and he continues to be needed by them for support, caregiving, and supervision.  Mr. Sharp will turn 66 in July of this year, and he is able to apply for Social Security benefits as early as March (*i.e.*, four months in advance of his eligibility date).  This income and, if he is not detained, his teaching income will support not just Mr. Sharp, but Mrs. Sharp, the two sons living at home, and three grandchildren.  Mr. Sharp's family needs him, and additional disruption to the family may be harmful to his grandchildren who have special needs.  This family has suffered as a result of the prosecution of Mr. Sharp and his wife Denise, and will suffer all the more if he is absent from their lives.

**B.  Departure:  5H1.4 – Physical Condition**

It is beyond doubt that all citizens in our country are now experiencing a national health emergency that adds special peril for people over the age of 65 and people who have underlying medical conditions.  Physical condition may be relevant to determining whether a departure is warranted, especially in combination with other offender characteristics that distinguish this case from the typical case.  It is highly questionable whether Mr. Sharp can be cared for properly by the prison system, given that there are so many unknowns caused by the current coronavirus pandemic (which is expected to continue for twelve to eighteen months until a vaccine can be provided to the public).  A man of Mr. Sharp's age (which is a risk factor for contraction of COVID-19), having his underlying medical conditions (diabetes and high blood pressure), and incarcerated during a nationwide pandemic, presents a situation not contemplated by the Sentencing Commission.  Mr. Sharp presents with health risks for which the BOP has had no opportunity to prepare.  Mr. Sharp therefore asks the Court to make the specific findings that would support a departure based on physical impairment in his case.

**C.  Relevant 18 U.S.C. 3553(a) Factors**

**1.  Nature and circumstances of the offense and the history and characteristics of Mr. Sharp.**

7

Because of the other related prosecutions in this matter, the Court is aware of the intense and bitter division between factions of the Blackfeet Tribe when this offense occurred.  Mr. Sharp, as Chairman of the BIA-recognized government, was very much under siege during this period, trying his level best to keep the wheels of governments spinning.  He also engendered the hatred of those in the opposing tribal faction.  While Mr. Sharp takes responsibility for his actions, the confusion and division of that era gave rise to the conditions in which this offense occurred.

It is defense counsel's opinion that Mr. Sharp would never have participated in the offense had the tribal government been functional and operating pursuant to normal procedures.  As the PSR indicates, Mr. Sharp is an educated and accomplished elder of the Blackfeet people.   He has long been an educator and a leader. The distorted conditions of the tribal split contributed to his participation in the Head Start scheme.  His participation in the scheme is, for him, a complete aberration.  In fact, during his time as Chairman, he assisted law enforcement with various corruption investigations.  This mistake, while very serious, should not erase an otherwise exemplary life.

## 2.   The need for the sentence imposed.

A sentence of probation, including a sentence of probation with a condition of home detention (USSG §5F1.2), reflects the seriousness of the offense, promotes respect for the law, and would be a just punishment.  This sentence

would allow Mr. Sharp to begin paying the restitution requirements of his plea agreement immediately, while significantly restricting his liberty and subjecting him to continuing community judgment.  The sentence would also deter similar conduct, as Mr. Sharp would be a visible example and reminder of the serious consequences of this kind of corruption – perhaps more so than sentencing him to a term of incarceration where he would be invisible to the community.  Mr. Sharp and his family have learned harsh lessons from this entire affair, and there is no possibility of such conduct in the future.  Finally, a sentence of probation with a condition of home detention is the most appropriate sentence given Mr. Sharp's age and underlying health conditions, and a nation-wide coronavirus state of emergency with no clear end in sight.

### 3.   The kinds of sentences available.

Mr. Sharp is statutorily eligible for a sentence of probation for not less than 1 year nor more than 5 years, because the offense is a Class C felony.  18 U.S.C. § 3561 (c)(1).  A fine, restitution, or community service must be imposed as part of any sentence of probation.  18 U.S.C. § 3563;  PSR 92.   A condition of home detention may be imposed by the Court as part of a sentence of probation, as a substitute for imprisonment.  USSG §5F1.2.   Defense counsel request a downward variance/departure from the guideline sentencing range for the following reasons: (1) Mr. Sharp's long history as an educator and leader, that is otherwise

unblemished; (2) the needs of Mr. Sharp's family; (3) the need to begin paying restitution; and (4) Mr. Sharp's age and underlying health conditions, which render him particularly vulnerable to the coronavirus.

### 4.  The need to avoid unwarranted sentencing disparities.

All defendants in this case have similar records and were found guilty of similar conduct.  Allen Shane Goss received a probationary term.  Carol Bird received a probationary term.  Mrs. Sharp served approximately nine months in custody.  In normal times, it would make sense that any disparity be scrupulously avoided in imposing terms of imprisonment on a husband and wife.  However, these are not normal times.  A custody sentence for Mr. Sharp at this time could pose a grave danger to him.  Significantly, he poses no danger to the public.  Either a lengthy sentence of probation or a term of probation with home detention would appropriately punish Mr. Sharp, while not exposing him needlessly to coronavirus if incarcerated.  The Defense requests that the Court consider granting Mr. Sharp probation with a condition of home detention.  The Court could also consider as part of a non-custodial sentence imposing community service requirements, in addition to the restitution required under the plea agreement.  USSG §5F1.3.

### 5.  The need to provide restitution to any victim of the offense.

This sentencing factor will best be fulfilled by a sentence of probation with a condition of home detention.  Pursuant to such a sentence, Mr. Sharp will be able

to continue to work and begin paying his restitution obligation immediately.

Further, the loss of employment that would follow incarceration would make

paying restitution more difficult.

## **Recommended Sentence**

After considering departures and 3553(a) factors, this Court should impose a

downward departure and variance.  The Defense respectfully recommends a term

of probation with conditions of home detention and community service, in light of

Mr. Sharp's unique circumstances.

RESPECTFULLY SUBMITTED this 17th day of March, 2020.

*Andrew I. Huff*
Andrew I. Huff
Law Office of Andrew I. Huff
2601 Broadway Street
Helena, MT  59601
Bar #4755

Attorney for Willie Andrew Sharp

## CERTIFICATE OF COMPLIANCE AND OF SERVICE

CR 47.2 (c), L.R. 5.2 (b)

I hereby certify that **WILLIE SHARP'S SENTENCING MEMORANDUM** comprises a total of 2,110 words.   I further certify that on March 17, 2020, a copy of the foregoing Memorandum was served upon the Clerk of the United States District Court and upon Assistant United States Attorney Ryan Weldon, by filing through the CM-ECF system.  A copy of the foregoing Memorandum was served upon Mr. Willie Andrew Sharp by placing the same in the U.S. Mail and through electronic mail delivery.

_Andrew I. Huff_
Andrew I. Huff
Law Office of Andrew I. Huff
2601 Broadway Street
Helena, MT  59601
Bar #4755

Attorney for Willie Andrew Sharp